All those previously announced in the times will be as allotted to counsel. The first case today is number one... Please, number one... Sorry, Judge. Good start. Good start. The first case today is number 191848, Bernard Waithaka v. Amazon.com, Inc., et al. Good morning, Your Honors. May it please the Court. I'm David Salmons on behalf of Amazon. I'd like to reserve three minutes for rebuttal, if I may. Yes. Yes. This case concerns whether local delivery drivers fit within the Federal Arbitration Act's limited exemption for classes of workers engaged in interstate commerce. The District Court held that local drivers are exempt interstate workers applying the flow of commerce standard developed under the FLSA. On appeal, plaintiffs urge the standard courts have adopted under FFILA, which is essentially interstate commerce or work closely related to it. But none of these alternative statutory standards is appropriate for the FAA's exemption for two primary reasons. The first is that they are a bad fit, and the second is that the Supreme Court in Circuit City specifically cautioned against applying other statutory frameworks to the Section 1 exemption. Let me start with FFILA. It is a remedial statute intended to provide compensation to injured workers, and so its reference to commerce has been construed broadly and liberally. The Supreme Court in Shanks, for example, expressly noted that it was going beyond the normal meaning of interstate commerce to address work closely related precisely to fulfill the broad remedial purposes of the Act. And that standard is wholly inappropriate. The FAA is adopted in 1925. FFILA preceded it in 1908. Isn't there a law supporting the proposition that the concept of commerce embodied in FFILA arguably informed the Congressional understanding of interstate commerce when the FAA was subsequently adopted? Well, I think what you'll find, Your Honor, and I think the Supreme Court's decision in Circuit City is instructive here, is that certainly it's relevant in a general sense. For example, the Supreme Court in Circuit City pointed out that courts had uniformly construed the concept of being engaged in commerce is far more narrow than the concept of being involved or affecting commerce. And so the court used those principles to demonstrate why the coverage provision of the FAA is far broader than this narrow exception. But otherwise, what the Supreme Court said was, in fact, and I think this is critical, it said that it warned against adopting those and carrying standards from other statutes over to the exemption, noting that these types of references to commerce in statutes don't have necessarily a uniform meaning in other statutory contexts. So the fact that it's understood that under FFILA that workers themselves are only working interstate but nevertheless they're part of a railroad industry with interstate implications, that's of no moment in understanding how commerce was understood when the FAA was adopted. It is true that workers under FFILA who are engaged only in interstate work are still covered by FFILA. Is that not so? Well, I think it's more complicated than that, Your Honor. I think what the case law under FFILA shows is, and first of all, keep in mind that FFILA, and this is one of the big statutory differences between FFILA and the exemption, FFILA focuses first on whether the carrier is engaged in interstate commerce and then whether the employee was employed in such commerce. And there's no reference in the exemption, especially the catch-all provision, to any notion of what the employer's commerce footprint is. That's sort of the model that I guess your opponent's argument applies here. The drivers themselves may only be involved in interstate commerce, but the business that they're a part of has interstate implications. So I think under the FFILA cases you're referring to, Your Honor, even though a railroad is engaged in interstate commerce in a general sense and has tracks and cars that are doing both interstate and intrastate, there are just a plethora of cases that parse out very finely whether the employee was actually engaged in the interstate component of the employer's work, the carrier's work, or the intrastate component. So, for example, you have Barron's and you have Schenck's, both of which make clear that when you have a worker that's injured while engaged on local intrastate cars that are making delivery from one part of a city to another, that they're not covered by FFILA. And so I think the FFILA cases aren't as supportive as plaintiffs suggest, and I also think that what the Supreme Court made clear in Circuit City is that rather than borrowing from standards from another statute, which the Supreme Court said do not necessarily have uniform meanings here, the court said that courts must construe the engaged in commerce language in the FAA with reference to the statutory context in which it is found in the FAA, not in other statutes, and in a manner consistent with the FAA's broad pro-arbitration purpose. All of which required a narrow construction, and taking a standard that has been given a broad remedial construction and applying it in the context of this exemption, I think, would be directly at odds with the counsels. So your opponent says that in Circuit City it said that engaging in commerce is a term of art which has been read to mean, I guess in the Claim Act in particular, in the flow of commerce. Is that an unfair reading of Circuit City? I think it is an incorrect reading. I think, in fact, what you see from the Supreme Court is that there are basically three rules that govern the proper application of the Section 1 exemption here. And the first is that you give the terms in the exemption their ordinary original meaning. That comes from new prime. The second is that you use the designated categories of seamen and railroad employees to give content to the scope of the catch-all. And the third is that you have to give a narrow construction to the exemption to avoid undermining the broad pro-arbitration purposes and broad coverage provision of the Act. And keep in mind that when Congress wrote the FAA, it addressed interstate commerce in two ways. First, in the coverage provision, which is transactionally focused. It asks whether there is a transaction involving commerce. That's the full extent of Congress's commerce power. It is expansive, and it's focused on issues like do you have goods that are traveling in interstate commerce. That gives you a connection to commerce, you're involved in commerce, you're covered by the pro-arbitration purposes. The exemption does something very different, and it's narrow. It focuses only on the activities that the class of workers are engaged to perform. And it asks, are those activities in and of themselves interstate commerce? And I think in its original meaning, interstate commerce means crossing over state lines. It's carrying goods or people across state lines. If a worker here routinely picked up a package at the Fall River facility and transported it to Rhode Island, what does that do to your analysis? Would that particular worker be interstate? No, Your Honor. And I think this illustrates another important difference between FELA and the Section 1 exemption, which makes FELA a poor substitute for the proper analysis. And that is that the inquiry under FELA, by its own terms, is on what that particular employee that was injured, the work that he or she was engaged in at the time of the injury. What the exemption does is it focuses on broad categories or classes of workers. Seamen, railroad employees. And it asks, for that broad class, are they engaged in interstate commerce in the relevant sense? And I think the natural reading of that, in light of those three rules that I articulate from the Supreme Court, is that if you're engaged in long-distance transportation services, if those are your activities, so seamen, railroad employees, commercial air workers, long-distance truckers, where the crossing over of state lines and interstate commerce is an inherent part of what you are engaged to do. So, counsel, what if it turned out to just expand Judge Thompson's example? Suppose a lot of workers doing the kind of work that we have here cross from Massachusetts into Rhode Island to deliver the packages. That begins to seem it's more like a class of workers if a lot of them do it. Would that change the analysis? So, let me type that in a couple of ways to make sure I'm addressing your example appropriately. So, I think you would have to define the class of worker in a comparable level of generality that the statute does. We're not talking about a Rule 23 class. We're not talking about a narrow geographic class. You can't gerrymander interstate commerce workers because you're defining the class to be only people that are working in a particular area where state lines are close by. You have to have a class of worker in commerce that's comparable to railroad employees, seamen. So, I think both parties, if I'm understanding our briefing correctly, would just define the class of worker here as local delivery drivers. And then the issue is, are those workers as a class engaged in interstate commerce in the way that seamen and railroad employees and other long distance transportation workers are? And we think the answer to that is no without need for any further development of what percentage of local drivers actually happen to cross state lines. In the Fall River facility, 50% stay within Massachusetts and 50% cross into Rhode Island on a regular basis. What do you do with that? Well, again, I think you can't define the class of worker as the Fall River depot deliverers. You have to define it more broadly. Seamen aren't defined under the statute in terms of those coming in and out of the facility. Would you use a national model? I think you do have to use a national model and I think you have to ask the question. And, you know, it's possible that Congress could come in. Remember, the whole point of this exemption is not to express any hostility to arbitration at all, but for Congress to reserve to itself the ability to tailor specific alternative dispute resolution mechanisms for those workers. Does the record support one version of the class or the other using your national model? Does the record in this case? Well, I think the record in this case shows that there's no allegations so far by the plaintiffs that they regularly cross state lines. I think the record is their own pleadings show that they claim that they only work, they do all of their work within the state of Massachusetts. Does the record show that the client that you represent would fall under one model or the other? I'm not sure I understand the question. You said use a national model. Does the record show which one your client falls under? Well, our client is certainly engaged in interstate commerce and across the nation and beyond, which is what makes the coverage provision. So sticking with the question that I asked, which is the last mile drivers, does the record show whether they stay within one state or whether they cross state lines? So the record has not been developed factually in great detail. Thank you. That was my question. Sure. Our position is that as a legal matter, that's not the proper inquiry here. Thank you. Thank you. Thank you. May it please the court. My name is Harold Richter and I represent the plaintiffs. My brother is simply wrong when he says that you have to have a crossing of state lines. In 1925, the one thing we agree on is that you have to look at what Congress intended in 1925, just as you decided in New Prime. When you look at the case law and the legal dictionaries from 1925 and just before that, there was ample case law from the U.S. Supreme Court stating clearly that interstate commerce is the flow of the goods from the time it starts from the factory or the lumber yard or wherever until its final destination. And during that whole time, it's in interstate commerce. We cited to you public justices in the Rouvier's Law Dictionary. That's a famous law dictionary from 1914. In there, it says, quote, commerce takes its character as interstate or foreign when it's actually shipped or started in the course of transportation to another state or to a foreign country. And this is important. They say, and I'm quoting, an express company. So this is just like we have here. This is taking goods from a steamer or railroad and transporting them through the street of the city to the consignee is still engaged in interstate commerce. That was the law as it stood at that time. Isn't there some force to your opponent's argument that the way you're asking us to interpret the language engaged in foreign or interstate commerce, it becomes very difficult to distinguish that from the involving commerce language in Section 2. It's hard to see how you limit your proposition in a way that sufficiently distinguishes, and the language is very different, sufficiently distinguishes the commerce reference in Section 1 from Section 2. How do you distinguish the two, given your argument? Well, the language in Section 1 says a class of workers engaged in interstate commerce. We know from Circuit City that you have to demonstrate two things. First, you have to be a transportation worker. And the Fela cases that my brother just described went off on the fact that some of these people were not transportation workers. Here, these are transportation workers. There's no question that they fit in the first part. They are quintessential transportation workers, more so than in Palco and the other cases. The second part is whether or not they are working with goods that are in the flow of interstate commerce. They are engaged in interstate commerce. And that you look at what they are doing. And it's clear that what they are doing in this situation is they're delivering packages that started out somewhere else in another country, in another state, and they're part of one continuous flow of interstate commerce. If you look at the Supreme Court cases involving Fela, which you mentioned, there are several cases which I believe really are directly on point. And the important point is that this would inform what Congress was thinking at the time. We really are looking for what was Congress thinking in 1925. In the Hancock case, which is a U.S. Supreme Court case just five years before 1925, the workers in that case were taking coal from the coal mine to the yard, the railroad yard, where they were then going on to other places to deliver the coal. The Supreme Court held that that was interstate commerce. They were working in interstate commerce. They were injured in interstate commerce. Therefore, they were covered by Fela. In the Birch case, you have a situation, and that was sort of like the original gig worker, where cargo was at a railroad station. They actually hired local people to unload the cargo there to deliver it in the town. And the court found that those people were engaged in interstate commerce, because you look at whether the goods are within the flow of interstate commerce. Are they still traveling in interstate commerce? In the Whaling v. Jacksonville paper, the Supreme Court said, although in a different context than the FLSA, that it's interstate commerce from the time you start the road, you start the process until it gets to its final place. Now, let's look at what Amazon is. Amazon is one defendant, but we're also suing Amazon Logistics. Amazon Logistics, and we put in documents to show this, bills itself as one of the largest logistics and delivery companies in the world. They say in their papers that they used to use UPS, they used to use FedEx, they used to use the United States Postal Service, and now they're doing it by contracting directly with people. These people come to the terminals, just like the UPS and USPS workers. They're picking up packages that are in the flow of interstate commerce, and they're taking them the last mile of the delivery. It's all still within the flow of interstate commerce. I don't know of any case that stands for a different proposition, and this has led every court that has addressed this issue, every circuit court, to find that you don't have to cross state lines to have the Section 1 exemption apply. That's what the Third Circuit found in Palco. That person was simply a supervisor at the airport in Philadelphia, supervising with a counsel. I have to say, it seems to me both you and your opponent are guilty of some bit of overstatement when you say there are no cases supporting each other's proposition. That just doesn't seem to be true. No, what I said, Your Honor, was that there are no circuit cases which support their proposition. We have cited to you the American Postal Workers Union, which is the 11th Circuit case from 1987, Lenz, which is the 8th Circuit case, which gives an eight-part standard, the Bacaluna case involving U.S. postal workers who were just local postal deliverers, and the Palco case. Every circuit court that has addressed this issue has found that there is no requirement of crossing state lines for how the Section 1 exemption applies so long as the goods involved are in interstate commerce. Now, you could envision a situation where the goods are not in interstate commerce. For example, the old milk cases where the milk is simply gone from the farm, and there people pick up the milk and deliver it to local residents. That would not be in interstate commerce. But when Congress enacted the FAA, they were aware that in interstate commerce meant the flow of goods from the beginning to the end. Counsel, you acknowledge that what Congress understood in 1925 is important. Circuit City goes into that, and it does make the point, why are railroad workers and seamen, why are they excluded? And there seems to be some evidence that Congress was sensitive to the fact that both these groups of employees were subject already to an arbitration scheme, and there was reluctance to disrupt those dispute resolution schemes that were already in place. Doesn't that suggest that in deciding how the residual clause should be applied, we have to consider whether the transportation workers that might be subject to the residual clause are also subject to that kind of alternative dispute resolution scheme? Well, as Lenz says, the Eighth Circuit, which is a very thoughtful opinion looking at a bunch of factors, it says that one of the things you should look at is how disruptive it would be to the economy. And in fact, Judge Hillman looks at that issue in his decision applying the Lenz factors in this case. And in both cases, and I think this is accurate, if you have the biggest retail deliverer of products in the United States, perhaps in the world, and all of a sudden all the workers who are delivering the products to the homes are not delivering the product, that would cause a huge disruption in our economy. It would be a huge disruption. And if Congress was concerned about that, because it is true in 1925, Section 1 was the product of some labor union opposition, then I think you fit into that easily. I don't see anything to the argument that whether the person is crossing state lines has anything to do with that analysis. I do want to address, if I may, the second question, because I think it's important. Judge Hillman went on to find, and by the way, he went on to find as have ten other district courts who have found the same thing, that Section 1 applies even where the goods are being delivered, intrastate, if they're part of a flow of intrastate goods. He then found that Washington law does not apply, because the contract specifically excludes Washington law from applying to the arbitration clause. He then went on to find that if any law applied, it would be Massachusetts law, but Massachusetts has made clear in the Machado decision that if the FAA doesn't apply to it, which we're saying it doesn't, if it doesn't apply, then it's unrestrained from conception and Christian and all those cases that you decided under the FAA, and Massachusetts, left to its own devices, has already declared in Machado that a class action waiver would be unenforceable under Massachusetts law. And they say that because the Massachusetts Wage Act has a specific provision which allows you to bring the case as a class, and they mention that in Machado and say that were we not constrained by conception, we would find a class action waiver in an employment contract to be unenforceable. Aren't you jumping over an important issue? I mean, there is this severability provision in the contract that we're concerned about, and if the conclusion is reached that the FAA doesn't apply, aren't you left with language in Section 12 which would read, the interpretation of this agreement is governed by the laws of the state of Washington without regard to its conflict of law principles, period. All that other language except for Section 11's agreement, which is governed by the federal, that would come out, and that would suggest that the laws of the state of Washington would now apply. I disagree, Your Honor, for the following reason. Unlike most arbitration contracts that we see where it says that this is pursuant to the FAA and there's a general choice of law provision for state law for other purposes, this contract has a unique provision which they put in for their own reason. It says in the clause after the arbitration clause that Washington law will apply except for the section above, meaning the arbitration clause. They specifically, and the judge in the Rittman case, which is currently in the Ninth Circuit, that judge Kofenauer said because of that, they've specifically rejected the company, the application of Washington law, so how could it apply? Because arbitration is simply a creature of contract. You have to have agreed that a law would apply, and when they specifically say in the contract you're signing that Washington law does not apply to the arbitration, how could a court go in and say, well, it actually does apply because of a residual clause? That really doesn't make any sense. And if it did apply, it still would be the case that if you apply a conflict of law analysis under the restatement 187.2, the public policy of Massachusetts is clear that a class action waiver would be unenforceable, and you would therefore have to apply the law of the state where the workers had the most contact with, which is Massachusetts. Even if you applied Washington law, which I don't think you can, we cited to you in our brief, Washington has decided in a series of cases, the biggest one is Scott v. Singular Wireless, that class action waivers are probably unenforceable. If the FAA doesn't apply, the rules of conception all those cases. Let me stop you there. You said probably unenforceable, and so it leads me to this question. If we disagree with you on the choice of law question and we think that Washington law should apply, should we then go ahead and answer the next question about whether it's enforceable or unenforceable under Washington law, or should this question go back to the district court on your view? Another thing would be to certify it to the Washington Supreme Court. But I really don't see how Washington law would apply under a conflict of law analysis. So you're saying we should decide? I think you should decide. If you have any question whether Massachusetts would enforce it, I'm confident it would not. I'm sorry. My question was if we disagree with you and we determine that Washington law should apply. I think you could go ahead and decide. I think the law is settled enough in Washington, although you could remand it to the district court for that analysis. But what's your preference? That's all I'm asking. My preference would be to remand it to the district court. The last thing I wanted to say, getting back to the Section 1 exemption, is even if you discount for a moment the FELA cases, prior to the FELA cases there were a series of decisions involving the Interstate Commerce Commission and interstate commerce and the taxing ability of states to tax commerce. And in all those cases, and we cite them in our brief, the Norfolk case and the Daniel Bell case, where you had railroads or ferries that were just working intrastate, the Supreme Court found on numerous occasions that that still, if it was carrying goods that were in the line of interstate commerce and were going eventually to other states or coming from other states, that there were limitations on taxation because those operations were in interstate commerce, not, as the defendants argued, interstate commerce. So I think if you really go back and look at what Congress understood in 1925, what the background was, just like in the New Prime case where you did the same thing and the Supreme Court affirmed, it seems clear beyond doubt that Congress understood interstate commerce to include any commerce, intrastate or interstate, as long as the goods themselves were in the flow, not whether the workers were crossing state lines, and I ask you to apply that analysis. Thank you. Thank you, Your Honor. Just a few points in rebuttal. Let me say a few words about the issue of a possible remand with regard to the frequency with which there might be the crossing of state lines. I think there are a few things to keep in mind. First, the Supreme Court has repeatedly cautioned against the erection of preliminary litigation hurdles, in fact, intensive inquiries that would delay the resolution of the motion to compel because it would rob the benefit of the choice of the arbitral forum in the first place. So unless it's absolutely necessary to properly apply the exemption, courts should avoid those type of factual inquiries. Here, I think what you heard from my friend on the other side focuses a lot on Amazon and the status of Amazon and the size of Amazon and its connection to commerce. He did it repeatedly, and I think it's very important to focus on the language of the exemption. It does not turn on the identity or type of employer. The catchall does not turn on how large the employer is or its connection to commerce, nor does it turn on the path of the products in interstate commerce. That is certainly relevant under the FAA to the coverage provision because it asks whether there's a transaction involved in commerce. But when you get to the application of the exemption, it's very clear you focus only on the activities of the class of worker. The class of worker here is local and diverse. The exemption talks about a class of workers. How can you understand what class of workers you're talking about if you don't have an understanding of what industry they're in, what business they're in? It's not sort of the class of workers in some abstract sense. It's a class of workers that are, if you look at the specific clause that precedes it, those are seamen, railroad employees. That's what it tells us the business that they're in. The class of workers is referred to in the residual clause also has to be engaged in some kind of business. So how can you not factor into the decision the kind of business that they're engaged in? We know from, for example, we know from Circuit City that they have some. Just to piggyback a little bit on Judge LaFleur's question, in enacting the FAA, Congress was referencing its powers under the Commerce Clause. So it necessarily has to apply to businesses engaged in interstate commerce. That's absolutely true. So why wouldn't we reference the business in order to see the breadth of the FAA plus the exclusions? So I think it's the interplay. I'm making a structural point about the difference between the coverage provision and the exemption. The coverage provision does exactly, I think, what Your Honor is articulating. The exemption does something different, and it has a narrow focus. It doesn't turn, for example, seamen are not exempted if they work for a large ship but not for a small ship, or if they only work for a company that has many ships as opposed to a company that has a few ships. You don't do an employer-by-employer analysis under the exemption. That would, again, create all kinds of additional fact inquiries that would be a burden to the enforcement of arbitration agreements. It gets into a lot of line-drawing problems, and it's not what the text of the exemption focuses on. I would urge the Court to take a look at the Knight case that's cited on page 14 of our reply brief. It's a case that arises under the Constitution itself. It involves local taxation issues, but you have there an interstate railway that also employs local taxi drivers to ferry people from the delivery point at the ferry to their final destinations. And the Supreme Court acknowledged that those persons, those passengers, were part of an element of continuous interstate transportation, and they nonetheless were deemed to be local and intrastate. And the Court walks through all the line-drawing problems you would have if you start going down that road. I think that's a helpful case as well. And with regard to the issue of choice of law, and I'll just make this point very quickly, both under Washington law and under Massachusetts law, under Machado, you have to look at the amounts in controversy to determine whether a class action waiver is problematic under state law or not. And the amount in controversy here is $14,000, which is well above what either state points to. The Scott case, for example, from Washington dealt with numbers between $5 and $45. So thank you, Your Honor. Thank you.